# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D23-3716
LT Case No. 2021-305059-CFDB

_____

DEPARTMENT OF CHILDREN
AND FAMILIES,

 Petitioner,

v.

STATE OF FLORIDA and
WILLIAM ELVEY,

 Respondents.

_____

Petition for Certiorari Review of Order
from the Circuit Court for Volusia County.
Raul A. Zambrano, Judge.

Jennifer L. Ware, Assistant General Counsel, of Department of
Children and Families, DeLand, for Petitioner.

Ashley Moody, Attorney General, Tallahassee, and Douglas T.
Squire, Assistant Attorney General, Daytona Beach, for
Respondent, State of Florida.

No Appearance for Respondent, William Elvey.

February 29, 2024

SOUD, J.

The Department of Children and Families petitions this Court for issuance of a writ of certiorari quashing the trial court's order involuntarily committing William Elvey upon finding he remained incompetent to proceed due to mental illness. We have jurisdiction. *See* Art. V, § 4(b)(3), Fla. Const.; Fla. R. App. P. 9.030(b)(3). The petition is denied.

I.

Elvey was charged in October 2021 with Aggravated Assault on a Law Enforcement Officer with a Deadly Weapon, a second-degree felony, and Fleeing or Attempting to Elude, a third-degree felony as charged. After defense counsel raised Elvey's possible mental incompetence, the trial court appointed Dr. Roger Davis to evaluate Elvey. As recommended in Dr. Davis's December 12, 2021 report, the trial court found Elvey incompetent to procced due to mental illness in May 2022 and placed him on conditional release. Amongst other conditions, Elvey was required to take all medications as prescribed. Ultimately, he violated this condition and was taken into custody.

Thereafter, the trial court ordered Dr. Davis to again evaluate Elvey. As Dr. Davis reports,[1] he "went to the Volusia Branch Jail's mental health unit to interview Mr. Elvey, but . . . was informed that [Elvey] had refused to come out of his cell to meet with me." In an attempt to overcome Elvey's refusal, correctional officers allowed Dr. Davis to speak with Elvey outside of Elvey's cell. Nonetheless, Elvey persisted in his refusal to cooperate, telling Dr. Davis "[i]t's redundant" and then "cluck[ing] like a chicken." Relatedly, mental health providers advised Dr. Davis that on several occasions Elvey would respond to their attempts to speak with him by "barking and howling" and, at other times, making sexually inappropriate comments.

Finally, Dr. Davis reviewed forensic case management status reports from June 2022 (the month after Elvey was first adjudged incompetent) through September 2023 (the same month he was taken into custody for violating conditional release). While there is

---

[1] Dr. Davis reported to the court in a writing dated November 13, 2023.

no mention in these records of Elvey "behaving in a bizarre manner," the records revealed a "recent Baker Act admission due to 'showing aggressiveness to hospital staff.'" However, the records also indicate that he was compliant with medication designed to improve memory functioning and "able to have meaningful conversation."

Dr. Davis ultimately concluded, "It appears that Mr. Elvey's bizarre behavior at the jail is volitional rather [than] a symptom of the neurocognitive disorder." Dr. Davis expressed uncertainty if Elvey was trying to appear incompetent in an effort to avoid prosecution.

Thereafter, and based upon stipulation of both the State and defense, on November 21, 2023, the trial court entered its order (again) adjudging Elvey incompetent to proceed and involuntarily committing him to the Department for treatment. From this order, the Department seeks certiorari relief.

The Department argues that Dr. Davis's November 13, 2023 communication to the trial court was insufficient in that it was unable to conclude if Elvey was at that time incompetent to proceed and met the criteria for involuntary commitment. As a result, the Department argues committing Elvey to its care for treatment was error. We disagree.

II.

A.

Certiorari has been determined by this Court to be "the proper vehicle for seeking this court's review of orders committing an individual involuntarily." *Dep't of Child. & Fams. v. Kirshner*, 49 Fla. L. Weekly D353 (Fla. 5th DCA Feb. 2, 2024). To warrant relief, the Department must establish the trial court's order involuntarily committing Elvey constitutes "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on postjudgment appeal." *Id.* (quoting *Williams v. Oken*, 62 So. 3d 1129, 1132 (Fla. 2011)). The last two requirements are often combined into the concept of "irreparable harm." *See id.*; *see also Adventist Health Sys./Sunbelt, Inc. v. Machalek*, 48 Fla. L. Weekly

D1971 (Fla. 5th DCA Oct. 6, 2023). "We must first consider the final two elements because irreparable harm is jurisdictional and must be found before we may decide whether there has been a departure from the essential requirements of the law." *Machalek*, 48 Fla. L. Weekly D1971.

This Court has recently determined that the Department "establishes the requisite irreparable harm or injury under these second and third prongs when it has been ordered to accept a defendant for involuntary commitment who does not meet the criteria." *Kirshner*, 49 Fla. L. Weekly D353. Thus, we find the Department would demonstrate irreparable harm if the trial court departed from the essential requirements of the law. Thus, we may properly exercise jurisdiction. However, we conclude the trial court did not depart from the essential requirements of the law in this case.

## B.

Part II of Chapter 916, Florida Statutes, governs forensic services for those who are mentally ill. As applied to the case *sub judice*, first the trial court was required to determine if Elvey was incompetent to proceed. As defined by section 916.12, he would be incompetent to proceed if he "does not have sufficient present ability to consult with . . . his lawyer with a reasonable degree of rational understanding or if [he] has no rational, as well as factual, understanding of the proceedings against . . . him." *See* § 916.12(1), Fla. Stat. (2023). Generally, an expert witness is required "to determine [Elvey's] mental condition . . . , including competency to proceed, insanity, involuntary placement, and treatment." *See* § 916.115(1), Fla. Stat. Finally, when, as here, Elvey has been adjudged incompetent due to a mental illness, section 916.13(1) sets forth the criteria that must be met before he may be committed to the Department for competency restoration treatment. *See Kirshner*, 49 Fla. L. Weekly D353.

## 1.

The trial court properly determined Elvey remained incompetent to proceed. Elvey was first adjudged incompetent due to mental illness in May 2022 and placed on conditional release. "An individual who has been adjudicated incompetent is presumed

4

to remain incompetent until adjudicated competent to proceed by a court." *See Henry v. State*, 178 So. 3d 928, 929 (Fla. 5th DCA 2015) (citing *Dougherty v. State,* 149 So. 3d 672, 676 (Fla. 2014)); *see also Abreu-Gutierrez v. James*, 1 So. 3d 262, 264–65 (Fla. 4th DCA 2009).

Upon Elvey's violating conditional release, the trial court correctly (and unlike in *Kirshner*[2]) ordered him again evaluated by Dr. Davis. Yet, Elvey steadfastly refused to cooperate with this evaluation. "A defendant may not thwart the competency determination process 'by refusing to be examined' by court-appointed experts." *Abreu-Gutierrez*, 1 So. 3d at 267 (quoting *Muhammad v. State,* 494 So. 2d 969, 973 (Fla. 1986)). "If the court has followed the procedures of the rules and the defendant's own intransigence deprives the court of expert testimony, the court must still proceed to determine competency in the absence of such evidence." *Muhammad*, 494 So. 2d at 973 (noting the trial court had opportunity to observe the defendant in open court, review letters and pleadings written by the defendant, and review the proffer of expert evidence).

In this case, the trial court followed the rules of procedure and the requirements of Florida law in ordering Elvey evaluated again after he violated conditional release. Thus, the trial court was not only permitted to proceed in determining his competence, but was

---

[2] We are aware that this Court recently held in *Kirshner* that that the trial court erred in adjudging the defendant incompetent to proceed based on a sixteen-month-old evaluation. However, the trial judge in *Kirshner* "found it unnecessary to order any further competency evaluations" after the defendant violated his conditional release. Our court concluded that such "a stale evaluation . . . does not constitute competent substantial evidence of a defendant's present level of competency." *Kirshner*, 49 Fla. L. Weekly D353. That is not the situation presented in the case before us. Here, the trial court did not simply rely upon the first report from Dr. Davis, which at time of commitment was approximately 23 months old. Rather, the trial court ordered an additional evaluation, which was refused by Elvey.

required to do so. And while the trial court did not have a full (customary) report from Dr. Davis, the trial court was not without evidence to determine Elvey's competence and placement.

First, Elvey was previously adjudged incompetent in May 2022, and it is presumed he remains so absent further order of the trial court. *See Henry*, 178 So. 3d at 929. Additionally, Dr. Davis's November 13, 2023 report of his partial evaluation paints a picture of Elvey "clucking like a chicken" in the presence of Dr. Davis, "barking and howling" at mental health providers at the jail, and, at other times, making sexually inappropriate comments. The report further describes a *then-recent* Baker Act admission for Elvey. In light of this evidence, and even in the absence of a comprehensive report resulting from Elvey's refusal to cooperate with Dr. Davis, the trial court had before it competent, substantial evidence to adjudge Elvey incompetent to proceed.

2.

Likewise, the trial court had before it sufficient evidence to involuntarily commit Elvey to the Department for competency restoration treatment at the state hospital. "[U]nder section 916.13(1) there must be clear and convincing evidence that the criteria under this statute are met before a felony defendant adjudicated incompetent to proceed due to mental illness may be involuntarily committed to [the Department] for treatment." *Kirshner*, 49 Fla. L. Weekly D353. As with competence, the findings justifying commitment are properly the subject of expert testimony. *Dep't of Child. & Fams. v. State*, 279 So. 3d 1271, 1272 (Fla. 5th DCA 2019) (quoting *Dep't of Child. & Fams. v. Lotton*, 172 So. 3d 983, 987–88 (Fla. 5th DCA 2015)); *see also Dep't of Child. & Fams. v. Tetley*, 365 So. 3d 479, 480–81 (Fla. 5th DCA 2023).

Pertinent here, as to placement, section 916.13 requires the court to conclude that because of mental illness, "[t]here is a substantial likelihood that in the near future the defendant will inflict serious bodily harm on . . . himself or another person, *as evidenced by recent behavior causing, attempting, or threatening such harm*." *See* § 916.13(1)(a)2., Fla. Stat. (emphasis added). The trial court also must conclude that all other available less-restrictive treatment alternatives are inappropriate. *See* §

6

916.13(1)(b), Fla. Stat. Finally, the trial court must find that there is a substantial probability that Elvey will regain competence "in the reasonably foreseeable future." *See* § 916.13(1)(c), Fla. Stat.

In this case, there was clear and convincing evidence warranting Elvey's commitment. First, Dr. Davis's report indicated a "recent Baker Act admission due to *'showing aggressiveness to hospital staff.'*" In light of this evidence presented by Dr. Davis's November 13, 2023 report to the court (limited by Elvey's refusal to allow a renewed evaluation), and considering the nature of the underlying charges against him, such evidence is sufficient under section 916.13 to establish that "[t]here is a substantial likelihood that in the near future the [Elvey] will inflict serious bodily harm on . . . himself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm[.]" *See* § 916.13(1)(a)2., Fla. Stat.

Further, commitment to the Department is the least restrictive means available that "would offer an opportunity for improvement of the defendant's condition . . . . " *See* § 916.13(1)(b), Fla. Stat. At the time of his commitment to the Department, Elvey had already violated his conditional release plan. That lesser restrictive means having failed, commitment is the least restrictive means that remained available to the trial court. This is made clear by the State and defense stipulating to Elvey's commitment to the Department.

Finally, there is sufficient evidence to conclude that a substantial probability exists that Elvey will regain competence in the reasonably foreseeable future. Dr. Davis's 2023 report indicated a Baker Act admission—and by clear implication his discharge and return to the jail's mental health unit. It further described Elvey's compliance with medication designed to improve memory functioning, and that notwithstanding his "bizarre behavior at the jail . . . he was able to have a meaningful conversation." In light of information obtained by Dr. Davis—though incomplete as a result of Elvey's refusing to participate in the evaluation—the trial court's findings are sufficiently supported by the evidence available to it.

### III.

In sum, the trial court rightly proceeded to determine competence and placement with the information before it in this case. Elvey's obstruction of Dr. Davis's evaluation—and the trial court's ability to receive a complete evaluation more fully considering Elvey's competence and each of the factors set forth in section 916.13—will not operate to defeat the trial court's decision to commit Elvey. Indeed, to hold otherwise would allow a defendant to obstruct the legal process and, for those so inclined, manipulate the proceedings to delay or avoid altogether prosecution for criminal actions. This the law does not permit or require.

Any deficiencies in Dr. Davis's November 13, 2023 report claimed by the Department are the direct byproduct of Elvey's refusal to participate in the evaluation. Elvey simply will not be permitted to thwart the judicial proceedings, the restoration of his competency (if such be possible), and his receiving treatment in a setting and manner contemplated by Florida law that protects Elvey himself, law enforcement personnel in the jail, and the public safety.

Accordingly, as the trial court did not depart from the essential requirements of law in adjudging Elvey incompetent to proceed and involuntarily committing him to the Department's custody for restoration training, the Department's petition for writ of certiorari is DENIED.

It is so ordered.

EDWARDS, C.J. and WALLIS, J., concur.

––––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––––